Argued and submitted December 10, 1980,
remanded March 23, 1981

GIBSON BOWLES, INC.,
*Respondent,*
*v.*
MONTGOMERY,
*Appellant.*
(No. A7904-01755, CA 17408)

625 P2d 670

James F. O'Rourke, Portland, argued the cause for appellant. With him on the briefs were John S. Marandas and Bloom, Ruben, Marandas & Sly, Portland.

Lee S. Aronson, Portland, argued the cause for respondent. With him on the brief were James C. Carter and Jensen, DeFrancq, Holmes & Schulte, Portland.

Before Gillette, Presiding Judge, and Roberts, Judge, and Campbell, Judge Pro Tempore.

GILLETTE, P. J.

**GILLETTE, P. J.**

Defendant appeals the judgment entered in favor of plaintiff after a trial to the court in this action for a real estate broker's commission. The trial court made findings of fact, but they did not include all the essential elements of the action. We remand for further findings.

On December 5, 1977, plaintiff and defendant entered into a 90-day exclusive listing agreement for the sale of certain property owned by defendant. That same day a salesperson in plaintiff's office made an offer on the property. That offer was accepted by defendant, and an earnest money agreement was signed on December 7, 1977. The sales price was indicated as $175,000, although defendant's primary concern, which he had written into the agreement, was that he receive $165,000 net after all of the expenses of the sale had been paid. The parties agree that this was their understanding and that defendant would continue to be liable for two encumbrances on the property. The purchaser was to borrow money for a substantial down payment, and defendant was to carry a contract on the remainder. The earnest money agreement was made contingent on the purchaser obtaining Veterans' financing for the down payment. Closing was to take place on March 1, 1978, or as soon thereafter as closing documents could be prepared.

The purchaser encountered delay in obtaining VA financing and applied for a conventional loan. He received a commitment letter from the bank in late March, and he testified that he received the down payment money on April 12, 1978. In the meantime, however, a federal tax lien was filed against all of defendant's property, including that involved here. This engendered further delays. The parties to the earnest money agreement, however, continued to deal with each other after the March 1 closing date passed.[1] In October, 1978, defendant indicated that he would not proceed with the sale.

---

[1] We need not detail the particulars of those dealings here. There is obviously a question of how long, if at all, the earnest money agreement remained in effect after March 1, 1978, but that is not an issue we are required to address in this proceeding.

" ' " '* * * When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract.' " ' " *Red Carpet Real Estate v. Huygens,* 270 Or 860, 864-865, 530 P2d 46 (1974).

The trial court found that plaintiff had produced a "ready and willing" purchaser; that the sale did not fail to close because of acts or omissions of the buyer or plaintiff; that the sale price was $175,000; and that the agreed commission was 6 percent of the sale price. It entered a judgment in favor of plaintiff for $10,536, plus attorney fees.

Defendant contends that the trial court's findings of fact were insufficient because it made no finding that plaintiff produced a buyer who was financially able to complete the transaction, and it did not find that it was through the fault of defendant that the sale failed to close. We agree that additional findings are necessary.

1.        The requirement that in order to be entitled to a commission, a broker must produce an able buyer has been repeatedly recognized:

"It has long been established that a real estate broker before he can recover a commission from his principal must establish his performance of the contract. This he may do * * * by furnishing his employer with a binding contract executed by an intended buyer who has the ability to perform the agreement on the terms authorized by the vendor. * * *" *DeHarpport v. Green,* 215 Or 281, 283, 333 P2d 900 (1959); *and see Woodworth v. Vranizan,* 273 Or 111, 539 P2d 1055 (1975).

Although the listing agreement here provided that plaintiff would be entitled to its commission if it produced a "ready and willing" buyer, the Supreme Court in *Martin v. Clinton,* 239 Or 541, 542, 398 P2d 742 (1965), construed similar language to require that the broker prove that he had produced a buyer who was ready, willing *and financially able* to purchase the property. *See Setser v. Commonwealth, Inc.,* 256 Or 11, 470 P2d 142 (1970); *Brown v. Grimm,* 258 Or 55, 481 P2d 63 (1971).

We do not think that it is playing semantic games to say that a buyer may be "ready" and "willing" to buy property, but financially *unable* to do so. The ability or inability of the buyer to perform has been the pivotal issue in several reported cases in which broker's commissions were sought. *See, e.g., Sipe v. Pearson,* 276 Or 715, 556 P2d 654 (1976); *Woodworth v. Vranizan, supra; Martin v. Clinton, supra.* Plaintiff was required to prove that it produced a ready, willing and able buyer for defendant's property before it could recover commissions. Without this necessary finding, the trial court's judgment was incomplete.

■ ■    Ordinarily a broker is not entitled to a commission unless the sales transaction is completed. However, there is an exception to that requirement when the failure of the contract results from the wrongful act or interference of the seller.

> "If * * * the sale fails because of the actions of the seller, the broker has fulfilled its obligation when it has produced a ready, willing and able buyer. It is not necessary that the sale be consummated. *Ward Cook, Inc. v. B-OK, Inc.,* 261 Or 227, 232, 493 P2d 136 (1972)." *Red Carpet Real Estate v. Huygens, supra,* 270 Or at 865.

Here the trial court found that the sale did not fail to close because of any act or omission of the buyer or the plaintiff, but it did not find that the sale failed because of the actions of the defendant. The trial court's findings are therefore insufficient to hold defendant liable. It is possible that a transaction might fail for a reason that was the fault of neither the buyer nor the seller.

■    Although it is uncontested that defendant notified the seller that he would not proceed with the sale in October, 1978, that is not conclusive on the issue of fault in this case. The closing date provided in the earnest money agreement was March 1, 1978. The court made no specific finding that there was a waiver of the closing date or that the agreement was still in effect in October. A finding that defendant caused the failure of the sale, or that the agreement was still in effect when defendant withdrew in October would have been sufficient. Neither finding was made, however. The trial court's judgment was therefore incomplete as to this matter, as well.

In *Briscoe v. Pittman,* 268 Or 604, 522 P2d 886 (1974), *overruled on other grounds, Halford v. Simpson,* 276 Or 107, 553 P2d 1055 (1976), the Supreme Court held that:

> "* * * where special findings have been made, we cannot assume a non-existent factual finding which is a material issue to recovery. To sustain a judgment based upon the trial court's findings, it must appear that the findings support the judgment on all material issues. * * *" 268 Or at 607-608.

*Briscoe* went on to hold that, where the record as a whole of the trial court's disposition of the case is ambiguous, it is proper to remand the case for entry of new findings. *Id.,* at 609.

█    The record here is ambiguous because a judgment was entered in favor of plaintiff despite the fact that there was no finding that the buyer was financially able to complete the sale, or that the transaction, which was not completed, failed due to defendant's actions. This case must be remanded for findings on these two material issues. *Ibid.*

Defendant also contends that plaintiff may not recover commissions because it did not prove that it performed its duty to disclose fully all of the information concerning the seller's offer and, specifically, that defendant was not informed that the buyer was a salesperson for plaintiff and that, as the selling agent, he would receive a portion of the sales commission. The trial court made no finding concerning this question.

█    A real estate broker has a duty of full disclosure of information to his principal. This includes informing the principal of all facts the principal should know in transacting his business. *Prall v. Gooden et ux,* 226 Or 554, 360 P2d 759 (1961). Although breach of that fiduciary duty is an equitable defense which constitutes a complete defense to an action for a commission by a real estate broker, *Freberg v. Calderwood,* 275 Or 647, 552 P2d 545 (1976); *Trip v. Barkdoll,* 263 Or 325, 502 P2d 219 (1972); *Prall v. Gooden et ux, supra,* it has been held that the broker has the burden of proving that that duty was faithfully performed. *Prall v. Gooden et ux, supra.*

■ ■ Defendant did not plead breach of fiduciary duty as an affirmative defense in his answer to plaintiff's complaint and did not seek to amend his answer to raise that defense. Although a trial memorandum filed the day of trial did contend that plaintiff had not fulfilled its duty of disclosure, that cannot be held to have put plaintiff on notice that it was being called upon to prove compliance with that duty. If defendant had sought to amend his answer on the day of trial to raise a new defense which put an additional burden of proof on the plaintiff, the trial court would have been well within its discretion in refusing to allow such an amendment at that time. *See* ORCP 23; *see also Oregon P. O. Bldg. Corp. v. McVicker,* 246 Or 526, 426 P2d 458 (1967); *Jefferson Potato Co. v. Parker,* 236 Or 472, 389 P2d 342 (1964). Defendant may not merely mention the issue in a trial memorandum filed the day of trial and consider the plaintiff obligated to produce proof on the issue. Defendant may not now rely upon breach of fiduciary duty as a defense to this action in this court.

Remanded.